**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**MARCO V. HARRISON, JR.** **PLAINTIFF**

**V.** **CIVIL ACTION NO. 1:23-CV-146-SA-DAS**

**MIKE KORTAS and**
**NEXA MORTGAGE LLC.** **DEFENDANTS**

**REPORT AND RECOMMENDATION**

In the present case, though he claims under oath to be an unemployed pauper without assets and unable to pay court costs, the plaintiff applied to Nexa Mortgage, LLC for financing to buy a home in Columbus, Mississippi, listed for seven hundred and twenty-thousand dollars. According to the plaintiff, by making the application, providing his Social Security number, and granting "the right" to approve the monies, Nexa was obliged to provide him with the money to buy this home. When Nexa did not comply, he sued them. He also sued Mike Kortas, though Harrison makes no allegations against him.[1]

This action is one of multiple lawsuits in this court that demonstrate Harrison never meant to pay anyone any money for anything. Each of his lawsuits seeks to invoke this court's federal question subject matter jurisdiction, citing various federal and foreign statutes.

**Sovereign Citizen Debt Avoidance**

While sovereign citizens make many and varied arguments, a prominent contention among

[1] Judging from the other complaints filed by Harrison, the court assumes that Harrison believes Kortas is the chief financial officer of Nexa and further believes -- as part of the sovereign citizen positions -- that the CFO has a fiduciary duty to him.

them is the belief that they are the beneficiaries of trust funds held by the federal government, typically referred to as the "redemption/strawman" argument. The theory is that when the government began issuing legal tender in 1933, its citizens "were 'pledged' as collateral for the national debt," resulting from the supposed loss of value because the country went off the gold standard." Michelle Theret, *Sovereign Citizens: A Homegrown Terrorist Threat and Its Negative Impact on South Carolina*, 63 S.C. L.Rev. 853, 864 (2012). This theory gives rise to sovereign citizens claiming "two identities: a real "private" individual and a fictional "public" person. They believe that by following certain procedures they can access the trust fund for the fictional "citizen" person allegedly held in that person's name by the United States Treasury." Jessica K. Phillips, *Not All Pro Se Litigants Are Created Equally: Examining the Need for New Pro Se Litigant Classifications Through the Lens of the Sovereign Citizen Movement*, 29 Geo. J. Legal Ethics 1221, 1226–27 (2016) (hereafter "Not All Pro Se Litigants)).

According to the sovereign citizens, not only are they provided for by these "trust accounts," but they are richly provided for, because these trust accounts are not for limited sums of money. "When citizens contract for debt, the theory goes, their debts are collateralized by their respective exemption accounts, essentially making the U.S. Government ultimately responsible for satisfaction of their debts…[E]ach citizen's exemption account is virtually bottomless, meaning that those who understand this theory…never have to actually pay for anything." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010).

The sovereign citizens also advance what is known as the vapor money theory for claiming unlimited wealth. "Vapor money theory is the belief that, since the United States government stopped using the gold standard, lenders now create unenforceable debts in which they lend credit instead of legal tender." *Williams v. TD Auto Finance, LLC,* 2024 WL 1957319

(N.D. Ga. Apr. 11, 2024), *report and recommendation adopted,* 2024 WL 2938732 (May 2, 2024) (citing *Price v. Lakeview Loan Servicing, LLC,*, 2021 WL 1610097 at *3 (M. D. Fla Apr 26, 2021) and *Sanford v. Robins Fed. Credit Union*, 2012 WL 5875712, at *4 (M.D. Ga. Nov. 20, 2012)) ("Plaintiff's central thesis ... is that, by virtue of the 1933 'bankruptcy' of the country and suspension of the gold standard, American citizens provided credit to the federal government to create and control the money system, giving rise to the government's obligation to discharge their debts."). Based on the vapor money theory "the promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *Price,* 2021 WL 1610097, at *4 (quoting *McLaughlin v*, 726 F. Supp. 2d at 212).

## **FACTUAL ALLEGATIONS**

In this action, Harrison, though never expressly identifying himself as such, again brings sovereign citizen claims. This time Harrison seeks damages because he was unable to buy the home he wanted because Nexa did not provide him with financing. Harrison claims in this case to be both a pauper and also entitled to funding on demand to buy a home for over seven hundred thousand dollars.

Specifically, Harrison alleges:

> I, Harrison Jr., Marco V., applied for a loan from Nexa Mortgage, LLC through a credit. In doing so, I, Harrison Jr., Marco V. allowed Nexa Mortgage LLC to use the social security number of MARCO V. HARRISON, JR. This is a consumer credit transaction and I, Harrison Jr., Marco, grant the right to approve this loan."

He further alleges:

> Nexa Mortgage LLC entered a consumer credit transaction with MARCO V. HARRISON, JR, by taking the estate (social security number) without giving the credits of the loan applied for.[2]

---

[2] The sovereign citizens use their names in all capitals to indicate the artificial straw man citizen, and regular capitalization to indicate the reference is to themselves as the real, natural person who is not subject to governmental control. *Bryant v. Washington Mut. Bank,* 524 F. Supp. 2d 753*,* 758, n.8 (W.D.

Harrison alleges that he has been damaged by the loss of the home which is no longer available for purchase "due to negligence of Nexa Mortgage LLC." He seeks $ 720,000 dollars, plus $3,850,000 "added to the loan amount." He "would also like for Nexa Mortgage LLC to apply the balance of the loan to the account of MARCO V. HARRISON, JR. every month to pay off in full, interest included." In other words he demands a mortgage for the purchase of the home, and that the mortgage be paid by others, presumably, according to his *Spears* hearing testimony, the federal government. As with all the other cases he filed, Harrison has executed the Rule 11 affidavit.

**SPEARS TESTIMONY**

Because Harrison sought leave to proceed *in forma pauperis,* the court held a joint hearing pursuant to *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985) in this action and in *Iriarte, supra,* and in *Harrison v, Young,* Civil Action No. 1:23-cv-129-GHD-DAS, (hereafter *Young*). At the *Spears* hearing, Harrison testified at some length about what he had learned from a purveyor of sovereign citizen tactics.[3] Harrison's claims in this action and in his other lawsuits, are based upon a mishmash of the redemption/strawman and the vapor money sovereign citizen claims.

While his *Spears* testimony was primarily focused on the facts in *Iriarte,* Harrison testified that the principles and laws to which he testified applied equally to each of his cases with *Iriarte* being discussed as the exemplar for the other actions. He testified that he was in fact the creditor in the car purchase in *Iriarte* because he provided his application and social security number when financing the car which is consistent with the vapor money argument. He testified

VA. 2007) aff'd 282 F. App'x 260 (4th Cir. 2008)

[3] Training seminars and how-to packages have been marketed to low-income communities as a quick fix for debt. Phillips, *Not all Pro Se Litigants,* at 1225.

that he was "taught" how he really does not need to pay for his purchases and that he cannot be denied credit.

This case builds on Harrison's testimony that he is the creditor. Harrison argues he is the creditor because he made the application, provided his social security number, and approved the grant of credit to himself. Nexa, therefore, he asserts had no right or power to deny him credit.

## JURISDICTION

This court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This duty persists throughout all phases of the litigation, "even after trial and the entry of judgment." *Id.* at 506.

In this case the plaintiff seeks to invoke this court's federal question jurisdiction under 28 U.S.C § 1331, which provides that the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The complaint must contain "clear, distinct, and precise affirmative jurisdictional allegations" to avoid dismissal. *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)). The plaintiff as the party seeking to invoke federal jurisdiction has the burden to establish that jurisdiction, and overcome the court's presumption that the suit falls outside of its limited jurisdiction. *Howery v. Allstate Ins. Co*., 243 F.3d 912, 916 (5th Cir. 2001).

Harrison, sets out the following as the basis for invoking federal question jurisdiction in this case:

"● Federal Reserve Section 16  ● 2. Application for notes by Federal Reserve Bank.  ● 4. Granting right to issue notes.  ● Cestui Que Vie Act of 1666,  ● 12 U.S.C. § 1431-Powers and Duties of the Banks."

First the court notes that Harrison's numbers 2 and 4 do not reference any statute, nor has Harrison, either in the pleadings, or in his testimony explained what authority if any he may be referencing.  The burden is on Harrison to establish jurisdiction, and the court need not speculate about what Harrison could possibly mean with these vague references.  "[C]ourts are not obligated to search out the identity of a party's vaguely-pleaded claims." *Mass v. McDonald's Corp.*, 2004 WL 2624255, at *2 (N.D. Tex. Nov. 12, 2004).  If the plaintiff fails to identify the jurisdictional grounds for his claim, those claims should be dismissed for lack of subject-matter jurisdiction. *Id.*

If a private citizen alleges violation of a federal statute as a basis for federal question jurisdiction, that statute must provide a private cause of action, or else a federal court will not have subject matter jurisdiction to hear the dispute." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 817 (1986).

Multiple cases have held that none of the statutes Harrison cites provide a private cause of action as is necessary to support federal question jurisdiction.  Because these statutes are popularly cited in sovereign citizen cases, multiple courts have addressed differing collections of these and other statutes.  But the courts have consistently ruled these statutes do not establish federal question jurisdiction. *Kornegay v. Capital One,* 2024 WL 1463794 (M.D. N.C. April  4, 2024), *report and recommendation adopted,* 2024 WL 2382300 (M.D. N.C. May 23, 2024) (12

U.S.C. § 1431 does not create a private right of action); *White v. Lake Union GA Partners, LLC*, 2023 WL 6036842, at *3 (N.D. Ga July 14, 2023) (The Federal Reserve Act, the Cestui Que Vie Act, the Bills of Exchange Act, 18 U.S.C. § 8, and 12 U.S.C. § 1431 do not provide private causes of action necessary for federal question jurisdiction.") (citing *Barnes v. Santander Consumer USA, Inc.*, 2023 WL 2585537, at *4 (N.D. Ohio Mar. 21, 2023) (Finding no subject matter jurisdiction where the plaintiff relied on 12 U.S.C. § 1431, and 18 U.S.C. § 8); *Thompson v. Mississippi Power Co.*, 2024 WL 3390607, at *2 (S.D. Miss., 2024) (There is no private cause of action under 12 U.S.C. 1431).

Because none of the statutes cited by Harrison give rise to private causes of action under federal law, there is no federal question subject matter jurisdiction. Therefore, the court should dismiss the case without prejudice.

**THE CLAIMS ARE FRIVOLOUS**

Alternatively should the court determine it has subject matter jurisdiction, the court should dismiss the case, because this action is frivolous, but the dismissal would then be with prejudice. As explained above, sovereign citizens theory as to how they may avoid paying their debts are not legally viable. Draped in nonsensical legal language, these theories lack the charm of fairy tales and cause real-world harms, burdening courts and subjecting parties to frivolous litigation.

Whatever legal terms they may use, the underlying theory is without merit. No matter what statutes they cite, however out-of-context, misunderstood, or outright misrepresented, the fact remains that the federal government does not hold trust funds for their benefit, and trying to pass their "vapor" money has never yielded the results they desire. Nor is Harrison a creditor who can demand unlimited credit by using his name spelled out in all capital letters and adding his Social Security number to an application for credit.

Nevertheless, in the interests of thoroughness, this report will briefly address the statutes Harrison relies upon, as set out in the *Iriarte* report.

Harrison's claim 12 U.S.C. §1431 supports his suit is without merit. This statute establishes the statutory framework for the regional Federal Home Loan Banks, which function as a supplier of loanable funds for other financial institutions. That these banks have the statutory power to borrow and loan money does not lend any support to Harrison's claims. No portion of this banking statute speaks to authorizing, much less mandating borrowing or loaning funds, to gift them to private individuals like Harrison, on demand. However elaborate his claims, arguments, and citations may appear, Harrison is not entitled to credit on demand.

Harrison invokes the Cestui Qui Vie Act of 1666, but this statute was not enacted within the United States and is therefore not applicable in this country.[4] Harrison does not reference the Bill of Exchange Act in this action, (unlike his other suits) but he demands his note be paid off for him, consistent with the claims he made in *Iriarte* and *Young.* Harrison implicitly incorporates a claim for using bills of exchange in this action. This statute is also of foreign origin.

The laws of foreign countries are simply inapplicable within this country. *Des Rochers v. Moynihan*, 2016 WL 11584833, at *2 (W.D. Tex. May 16, 2016) (finding plaintiff's "attempt to enforce an English law in an American court" to be "legally frivolous" where plaintiff purported to bring suit pursuant to the "Bill of Exchange Act of 1882"); *Wilson v. Aqua Fin.*, 2023 WL 7924150, at *4 (D.S.C. Oct. 26, 2023), *report and recommendation adopted,* 2024 WL 1406015

[4] The Cestui Que Vie Act of 1666 is "a seventeenth century Act of the English Parliament that presumes a person is dead if there is no "sufficient and evident proofe" that the person is still alive, for instance if a person is lost at sea. See Cestui Que Vie Act, 1666, 18 & 19 Car. 2, c.11 (text available at https://www.legislation.gov.uk/aep/Cha2/18-19/11/section/I (accessed July 28, 2023). The Act permits the remainder man of a life estate to terminate a tenant's life estate after the tenant has "gone beyond the Sea" for seven years. *Faulkner v. Decker*, 2023 WL 8653847, at *1 (D.Id Dec. 14, 2023).

(D.S.C. Apr. 2, 2024) (None of the authorities cited by the plaintiff including the Cestui que Vie Act 1666 and Bills of Exchange Act 1882 create a federal cause of action.)

Harrison also attempts to invoke Section 16 of the Federal Reserve Act, a common citation in sovereign citizen litigation, but neither his pleadings nor his testimony refers to any particular provision of this statute. Nor does Harrison allege any facts that connect the statute to his situation, even if this statute allowed for a private cause of action. *White,* 2023 WL 6036842, at *2 (N.D. Ga. July 14, 2023) ("Section 16 of the Federal Reserve Act ... was codified as Subchapter XII of Title 12, Chapter 3 of the United States Code…. Multiple courts across the country have held that this section does not provide plaintiffs with a private right of action.) (Collecting cases). *Morton v. Am. Express*, 2023 WL 7923927, at *3 (S.C. Oct. 18, 2023) ("[I]t is well settled that Sections 16 and 29 of the Federal Reserve Act do not create a private cause of action and, consequently, do not provide a basis to invoke this Court's federal question jurisdiction.")

**LITIGATION HISTORY AND CONSIDERATION OF SANCTIONS**

In *Iriarte, supra,* Harrison decided to buy a used car. In keeping with the sovereign citizen teachings and in lieu of actually making payments for the car, Harrison wrote on payment coupons provided by the bank, stating they were payable to himself, as if this made them negotiable instruments, or as he and the sovereign citizens name them, bills of exchange. He mailed the coupons back to the bank. He filed suit initially when his demands for credit for these coupons on his indebtedness were ignored. He filed the second action, which was consolidated with the first, when his failure to make payments lead his creditor to repossess the car. The undersigned has filed his report and recommendation that the *Iriarte* action, except for Truth-In-Lending claims, be dismissed. That report and recommendation is currently pending.

In *Young, supra,* Harrison sued Andrew Young and The Bank of New York Mellon -- again based on the sovereign citizen beliefs and tactics. That time Harrison alleged he was wronged when the Capital One credit card he obtained was not credited when he sent in "bills of exchange," instead of payments to the creditor. In *Iriarte*, Harrison claimed that writing on payment coupons that they were "accepted" by him and "payable to him", made the documents negotiable instruments that should have been credited to his indebtedness. In *Young,* he made the same claims, except this time he was writing on and returning his credit card bill. The undersigned has filed his report and recommendation that this action be dismissed either for lack of federal question jurisdiction or because it is frivolous.

In *Harrison v. Owens*, 1:24-cv-19-SA-RP, Harrison sued Thomas Owens and Trustmark National Bank. In that case Harrison alleged he had a credit card with Trustmark with a five-thousand-dollar credit limit. He claims he tendered "multiple negotiable instruments" to pay the account. He sought to invoke the court's jurisdiction by citing some of the sovereign citizen's favorite statutes, foreign and domestic. In that action, Harrison paid the filing fee. The defendants were served and their motion to dismiss the case for lack of jurisdiction is pending.

And in yet another case, Harrison sued Phill Goss and Wilmington Trust, National Association, in Civil Action No. 1:23-cv-152-SA-DAS. He sought to proceed *in forma pauperis* in that action. It is another sovereign citizen action alleging the defendants were given "access to the social security number of MARCO V. HARRISON, JR," but failed to apply his credits properly. It alleges he was trying to set up an account with Wilmington Trust. Consistent with his other litigation, Harrison claimed to "have endorsed multiple bills for pay off without effect." He demanded pay off on the account each month and an increase in his credit line to fifty-

thousand dollars. After this action was set for a *Spears* hearing, Harrison voluntarily dismissed that case stating he had sued the wrong defendant.

The above litigation history demonstrates a pattern of filing frivolous litigation. Harrison's actions have squandered judicial resources and needlessly imposed legal expenses against several defendants. Consequently, the court should consider the imposition of sanctions for violation of Rule 11 of the Federal Rules of Civil Procedure, and/or entry of an order restricting Harrison from future filings, whether or not he requests leave to proceed *in forma pauperis.*

.

## CONCLUSION

The truth about Harrison's suit against Kortas and Nexa Mortgage, LLC, is that despite draping his claims in legal language and citing to multiple statutes, foreign as well as domestic, the various theories advanced have been consistently rejected by the courts as frivolous. "These teachings have never worked in a court of law—not a single time." *Wirsche v. Bank of Am., N.A.*, 2013 WL 6564657, at *2 (S.D. Tex. Dec. 13, 2013). "From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous." *Hennis v. Trustmark Bank*, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010). *Mould v. Saxon Mortg. Servs., Inc.,* 2005 WL 1950268 at *2. (Dismissing claim that plaintiffs' debt was discharged by offering bill of exchange for failure to state a claim).

Harrison's claims that he may receive any amount of credit on demand is utter nonsense—a fact the undersigned is convinced is just as well known to this plaintiff as it is to the court. The undersigned reports that the plaintiff's testimony showed him, despite the non-

sensical nature of his claims, to be both articulate and apparently intelligent. The undersigned was left with the impression that Harrison has not only filed a complaint that is completely frivolous in this action, but that he does not actually believe the sovereign citizen's yarn he spun before the court at his hearing. His filing this action cannot be excused as good faith ignorance.

Even though Harrison does not use the specific words "sovereign citizen," his claims are clearly based in that ideology, are frivolous, and subject to summary dismissal." *Wilson*, 2023 WL 7924150, at *3. By his reliance on sovereign citizen tactics, Harrison has succeeded in two things — wasting the court's time and damaging whatever credit he had before acting on the advice of his teacher.

Accordingly, Harrison's complaint should be dismissed. "As is common in these suits, plaintiff relies on a legal fiction to support a monetary claim that has no basis in the laws of the United States." *Wood v. United States*, 161 Fed. Cl. 30, 33 (2022). The sovereign citizen claims are "based on an indisputably meritless legal theory," and are frivolous and should be dismissed with prejudice. *Neitzke,* 490 U.S. at 327.

**RECOMMENDATION**

Based on the above analysis, the undersigned recommends as follows:

1. That the court find that that it does not have federal question subject matter jurisdiction pursuant to 29 U.S.C. § 1331 and dismiss this action without prejudice.

2. Should the court find that it has subject matter jurisdiction on some other basis, the complaint should be dismissed with prejudice because it is frivolous.

The plaintiff is referred to 28 U.S.C. § 636 (b) (1) and Local Rule 72 (a) (3) for the appropriate procedure in the event he desires to file objections to these findings and recommendations. Objections must be in writing and must be filed within 14 days of this date.

Failure to timely file objections to the proposed findings and recommendations will bar an aggrieved party from challenging on appeal both the proposed factual findings and the proposed legal conclusions that are accepted by the district court. *Douglas v. United States Automobile Association*, 79 F. 3d 1415 (5th Cir. 1996).

**THIS** the 29th day of August, 2024.

**/s/ David A. Sanders**
**U.S. MAGISTRATE JUDGE**